# Wagers v. Barber

Court of Appeals of Kentucky

May 22, 2020, Rendered

NO. 2019-CA-000017-MR

**Reporter**
2020 Ky. App. Unpub. LEXIS 353 *; 2020 LX 75025; 2020 WL 2603863

PAUL MICHAEL WAGERS, APPELLANT v. HOUSTON BARBER AND JAMES FRANCIS, APPELLEES

**Notice:** THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, *RAP 40(D)*, THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

**Prior History:** **[*1]** APPEAL FROM FRANKLIN CIRCUIT COURT. HONORABLE PHILLIP J. SHEPHERD, JUDGE. ACTION NO. 18-CI-00768.

**Counsel:** BRIEFS FOR APPELLANT: Dr. Kenneth J. Henry, Louisville, Kentucky.

BRIEF FOR APPELLEES: Elizabeth A. Deener, Lexington, Kentucky.

**Judges:** BEFORE: LAMBERT, MAZE, AND K. THOMPSON, JUDGES. ALL CONCUR.

**Opinion by:** AND K. THOMPSON

## Opinion

AFFIRMING

THOMPSON, K., JUDGE: Paul Michael Wagers appeals from a summary judgment in favor of Houston Barber, the Franklin Independent School District's (FISD) Superintendent of Schools, and James Francis, FISD's Director of Human Resources, based on qualified official immunity. He argues that Barber and Francis acted with bad faith when they individually and together deprived him of his right to a tribunal hearing pursuant to *Kentucky Revised Statutes (KRS) 161.790* after he received a notice of recommended termination of his employment as a teacher. We conclude Barber and Francis are entitled to qualified official immunity and affirm.

The events pertinent to this appeal began on the evening of August 4, 2017, when a Frankfort Police Department detective was surveilling a residence where it was believed controlled substances were sold. The detective observed Wagers's vehicle parked outside the residence. The detective then observed **[*2]** a male, Theodric Allen, exit the vehicle, enter the residence, exit and walk back to the vehicle, lean in the back door, and then return to the residence. Within a minute, Allen left the residence and returned to the vehicle, sitting in the passenger side. The vehicle then left the residence and the detective followed. After Wagers failed to properly signal a left turn, the detective notified two officers who initiated a stop.

**APPENDIX 1**

During the stop, the officers detected the odor of marijuana emanating from the vehicle. A search of the vehicle revealed a small baggy of methamphetamine. Wagers was arrested.

On August 7, 2017, Barber signed a notice of recommended termination of employment with the FISD that was delivered to Wagers at the Franklin County Regional Jail. The notice explained that Wagers's employment had been recommended for termination "[i]n accordance with Franklin Independent School District Policy 03.173 and KRS 161.790 Section 1(b) as it relates to immoral character and/or conduct unbecoming a teacher" and specifically referenced Wagers's possession of a controlled substance. The notice also stated:

> Because your employment has been recommended for termination, under KRS 161.790, you may within ten (10) days **[*3]** of receiving this charge notify the commissioner of education and the superintendent that you intend to answer the charge and upon failure of the teacher to give notice within ten (10) days, the dismissal shall be final.

On August 8, 2017, at 3:54 p.m., Wagers emailed Barber requesting a tribunal hearing. Barber forwarded the email to Francis the same day at 3:55 p.m.

Also on that same day and after emailing his request for a tribunal hearing, Wagers met with his defense attorney, Rodney Barnes. During that meeting, Wagers received a call from Francis. Francis and Wagers differ as to the content of their discussion.

According to Francis, Wagers asked about his options and whether he could resign. Francis informed him that because the notice of recommended termination had been received by Wagers, Wagers would have to request to resign. Francis told Wagers he could not advise him of what action to take and suggested Wagers consult with an attorney. Wagers told Francis he would "think about it" and let Francis know.

According to Wagers, Francis told him that the notice of recommended termination would be removed from his file if he resigned and that Wagers did not qualify for a tribunal hearing **[*4]** because he had already been terminated. In an affidavit, Barnes stated that upon ending the call, Wagers asked him if what Francis stated was true. Barnes told Francis he did not know that answer and could not advise Wagers because he lacked the necessary expertise in that area. Additionally, Barnes explained that he had a conflict of interest because his spouse was a member of the FISD school board.

While still in Barnes's presence, Wagers called Francis. Although Barnes took notes, he declined to listen on speaker phone, so his notes only reflect Wagers's end of the conversation. According to Barnes's notes, Wagers asked, "So I'm fired and don't get a trial or appeal?" Wagers then said, "Man that sucks," and then, "But if I don't, if I do resign, that will be it?" The conversation continued: "If you have my resignation letter you'll remove the termination from my record and take no further action? . . . I'll be clean? . . . Okay, in that case, I'll probably do that, can I have until tomorrow? . . . Okay, I'll talk to my lawyer but that's what I'll probably do. Thanks." At the conclusion of the conversation, Wagers again asked Barnes's legal opinion and Barnes again declined to advise **[*5]** him.

On August 9, 2017, at approximately 8:47 a.m., Francis made a report to the Education Professional Standards Board (EPSB) of Wagers's arrest and included the notice of recommended termination through the Online Educator Complaint System. That same morning at 10:50 a.m., without consulting with an attorney, Wagers emailed his resignation letter to Francis retroactive to August 7, 2017. Barber also received a copy and accepted the resignation, which applied retroactively to August 7, 2017. Barber withdrew the notice of recommended termination, and the notice was removed from Wagers's personnel file. The EPSB received a copy of Wagers's resignation letter within an hour of its receipt by the FISD.

On August 22, 2017, Wagers was indicted for possession of a controlled substance in the first degree (methamphetamine). Ultimately, Wagers accepted a plea deal to defer prosecution of the case for one year, after which the indictment would be dismissed so long as all conditions (including drug screening) were satisfied. After all conditions were met, the indictment was dismissed on August 8, 2018.

On August 6, 2018, Wagers filed this action against numerous defendants including Barber and **[*6]** Francis in their individual and official capacities. All defendants other than Barber and Francis were dismissed by agreed order on September 19, 2018. Wagers alleged Barber and Francis, individually and together, denied him due process and fraudulently induced him to resign.

On September 4, 2018, in lieu of a responsive pleading, Barber and Francis filed a motion to dismiss. When at the hearing the parties discussed matters outside the pleadings, the trial court instructed Barber and Francis to file a motion for summary judgment and provided time to file and respond to the motion for summary judgment. That time was extended by agreed order signed on September 25, 2018.

On October 8, 2018, Barber and Francis filed a motion for summary judgment, including supporting memorandum, exhibits, and affidavits. In that motion, Barber and Francis asserted qualified official immunity as a defense. Wagers responded on October 18, 2018, also with supporting affidavits.

On November 13, 2018, the trial court issued an order granting Barber and Francis summary judgment. In that order, the trial court found that the affidavits submitted showed there was only a miscommunication between Francis and Wagers **[*7]** or a mistake by Francis concerning Wagers's right to a hearing. There was no evidence of fraud, conspiracy, or denial of due process. The trial court further found that Wagers's reliance on Francis's alleged statements was unreasonable, noting that the notice of recommended termination clearly explained his appeal rights and, if Wagers misunderstood his rights, it was because he did not consult an attorney prior to resigning. The trial court also noted that *KRS 161.120* and 16 Kentucky Administrative Regulations (KAR) 1:030 *§2* required that the FISD submit a written report to the EPSB with the name and contact information of any employee whose contract was terminated. As to Wagers's due process claim, the trial court concluded Wagers was not denied his right to a tribunal hearing, noting there was no hearing because Wagers resigned. It also reasoned that no damages could result from a denial of due process because Wagers's actions on August 4, 2017, clearly warranted termination.

Wagers filed a motion to alter, amend, or vacate the November 13, 2018 summary judgment. He argued that the trial court exceeded the scope of Barber's and Francis's motion for summary judgment, which he contended addressed **[*8]** only the issue of qualified official immunity. He also argued he was entitled to additional discovery on the motion.

The trial court found Wagers was given ample time to develop a factual record, noting it issued a scheduling order, which the parties extended by agreement. The trial court ruled that although qualified official immunity was not directly addressed, its earlier summary judgment resolved the qualified immunity question. The trial court concluded that there was "overwhelming evidence that [Barber and Francis] acted in good faith within the scope of their duties in performing discretionary acts in their discussion with [Wagers] about his resignation." Wagers appealed.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Kentucky Rules of Civil Procedure (CR) 56.03*. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc., 807 S.W.2d 476, 480 (Ky. 1991)*. "Summary judgments play an especially important role when dealing with immunities," as the defense renders one immune not just from liability, but also from suit itself. *Rowan Cty. v. Sloas, 201 S.W.3d 469, 474 (Ky. 2006)*. The issue of school officials' **[*9]** entitlement to qualified official immunity is a matter of law which we review *de novo. Patton v. Bickford, 529 S.W.3d 717, 723 (Ky. 2016)*.

Public officers and employees are shielded from liability for the negligent performance of discretionary acts in good faith and within the scope of their authority. *Yanero v. Davis, 65 S.W.3d 510, 522 (Ky. 2001)*. Discretionary acts are those "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" *Id.* As stated in *Yanero*, "[o]nce the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id. at 523*. "Bad faith is '[t]he opposite of "good faith,"

and it is *not prompted by an honest mistake* as to one's rights or duties, but by some interested or sinister motive.'" Sloas, 201 S.W.3d at 483 (quoting *Bad faith*, BLACK'S LAW DICTIONARY 176 (4th ed. 1968)).

Negligently performing or negligently failing to perform ministerial duties is not shielded by the doctrine of qualified official immunity. Yanero, 65 S.W.3d at 522. A ministerial act is one that is "absolute, certain, and imperative, involving merely execution of a specific act arising from fixed **[*10]** and designated facts." *Id.* (citation omitted).

The trial court concluded that at the relevant times, Barber and Francis were performing discretionary acts. Wagers does not dispute that conclusion but argues there is a material issue of fact as to whether Barber and Francis acted in bad faith to deny him a tribunal hearing.

Wagers was entitled to a hearing if he chose to challenge his termination. KRS 161.790 states in part:

> (3) No contract shall be terminated except upon notification of the board by the superintendent. Prior to notification of the board, the superintendent shall furnish the teacher with a written statement specifying in detail the charge against the teacher. The teacher may within ten (10) days after receiving the charge notify the commissioner of education and the superintendent of his or her intention to answer the charge, and upon failure of the teacher to give notice within ten (10) days, the dismissal shall be final.
>
> (4) (a) Except as provided in KRS 163.032, upon receiving the teacher's notice of his or her intention to answer the charge, the commissioner of education shall appoint a three (3) member tribunal, consisting of one (1) teacher, who may be retired, one (1) administrator, who **[*11]** may be retired, and one (1) attorney to serve as hearing officer and chairperson of the tribunal, none of whom reside in the district, to conduct an administrative hearing in accordance with KRS Chapter 13B within the district.

There is no dispute that in the recommended notice of termination signed by Barber and delivered to Wagers, Wagers was given notice of his right to a hearing before a tribunal if he made a timely request. Wagers obviously understood this notice as he sent an email to Barber on August 8 requesting a tribunal hearing.

Essentially, Wagers argues he was "tricked" into resigning. In his view, there is a material issue of fact as to whether Francis told Wagers that he could not have a hearing because he had already been terminated. He argues that as a result of Francis's statement, he was denied his statutory right to a tribunal hearing or it was a statement made in bad faith. As to Barber, Wagers argues that Barber was involved in a scheme with Francis to deny Wagers a hearing and, therefore, he also acted to deny him a tribunal hearing and acted in bad faith.

There is undisputed evidence that refutes Wagers's claim that Barber participated in any conspiracy with Francis. Barber informed **[*12]** Wagers in writing of his right to a tribunal hearing. Wagers's suggestion that because Barber forwarded Wagers's email demanding a tribunal hearing to Francis, there was evidence of a conspiracy to deprive him of a tribunal hearing has no basis in fact. Nowhere in that email or any other email is there even a hint that there was any conspiracy to deprive Wagers a tribunal hearing. Barber merely forwarded Wagers's demand to Francis as could be expected because Francis was the FISD Human Resources Director.

Nor can it be said that Barber acted in bad faith when he accepted Wagers's resignation. He clearly had the discretion to do so under KRS 161.780(2).

A basis for Wagers's recommended termination was for "conduct unbecoming a teacher[,]" a stated ground for termination of a teacher under KRS 161.790(1)(b). What conduct constitutes "conduct unbecoming a teacher" was explained by our Supreme Court in *Board of Education of Fayette County v. Hurley-Richards, 396 S.W.3d 879, 887 (Ky. 2013)* (footnote omitted):

> Although conceptually broad compared to some of the other grounds for termination listed in the statute, conduct that fits within this definition will be conduct that violates the accepted norms of decent behavior and offends the sensibilities of reasonable persons, taking into account the role of a **[*13]** secular, public school

teacher in our culture. Teachers are reasonably expected to serve as role models and exemplars for their students, and they typically do.

While Wagers minimizes his conduct and asserts he has never tested positive for any illicit drugs, his conduct on the night of August 4, 2017, was sufficient reason for Barber to issue a recommendation of termination. There is no evidence that Barber acted with some sinister motive in signing the recommended notice of termination.

Wagers argues that there was some nefarious motive in Francis's report of Wagers's arrest to the EPSB and inclusion of the recommended notice of termination. However, under *KRS 161.120* and 16 KAR 1:030, the superintendent or his designee is required to report certain violations of educator ethics to the EPSB and include relevant documents. While Wagers argues that the report could have been delayed until Wagers decided to resign, no statutory or regulatory provision required that Barber or Francis do so. As soon as Wagers requested to resign, the EPSB was notified of this change in status and supplied the resignation letter. Again, there is no evidence of bad faith. Barber and Francis were merely following statutory **[*14]** and regulatory requirements.

Wagers argues that "[t]he primary issue of material fact in issue is whether Appellee Francis told [him] that he could not have a tribunal hearing because he had already been fired." However, even assuming Wagers's account of his conversation with Francis is accurate, there is no evidence that Francis made any statement in bad faith.

Without any evidentiary basis or even logical basis, Wagers argues Francis's sinister motive was to induce him to resign because Barber did not want to report his decision to terminate Wagers to the Board of Education because Wagers would have succeeded at a tribunal hearing. Given the facts, that result is doubtful. Moreover, the undisputed facts are that Wagers was informed of his right to a tribunal hearing, understood that right, and, without consulting with counsel, chose to resign. In short, the reason Wagers was not entitled to a hearing was that he resigned from his teaching position at FISD. As noted in *Redmon v. McDaniel, 540 S.W.2d 870, 871 (Ky. 1976)*, "a voluntary resignation is just as much a waiver of [a] statutory right to a hearing as is the waiver of a jury trial by an accused."

As stated earlier, the Franklin Circuit Court initially granted summary judgment **[*15]** to Barber and Francis after considering the underlying causes of action. Wagers argues "whether summary judgment was appropriate on the causes of action raised" in the complaint was not before the trial court. In light of our agreement with the trial court that Barber and Francis are entitled to qualified official immunity on all causes of action asserted, that issue is moot.

Finally, Wagers argues that the Franklin Circuit Court acted prematurely when it granted summary judgment without ample time to conduct discovery. His argument is not well taken.

At the September 17, 2018 hearing on Barber's and Francis's motion to dismiss, the parties discussed matters outside the pleadings. The trial court stated the motion would be treated as a motion for summary judgment and the parties were given a "reasonable opportunity" to develop the factual record. An agreed order extending the time to file the summary judgment motion was entered on September 25, 2018. As noted by the trial court, "at no point did either party object to the limited period of time to develop a factual record or seek any additional extensions of time, nor did Plaintiff submit any affidavit setting forth material factual **[*16]** disputes that would require a trial."

As indicated, the parties signed an agreed order setting the date for the filing of the summary judgment motion. It is disingenuous for Wagers to argue he was not given sufficient time to conduct discovery.

For the reasons stated, the summary judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.

---

**End of Document**